PARTRIDGE *et al.,* *Appellants,* v. CAVENDER *et al.;* POST, *Appellant.*

1. **Will : RESTRAINT ON POWER OF ALIENATION : CREDITORS.** A testator gave by his will property in trust for his son for life and directed the trustees to pay the income to the son semi-annually, "on his personal receipt therefor, without his said son having any power to sell, assign or pledge the same previous to the payment thereof to him," which receipt should be the trustees' acquittance. *Held* that neither the accrued income in the possession of the trustees, nor the accruing income could be reached by the son's creditors or be assigned by him.

2. ———: ———: ———: **LEGAL SERVICES.** The express will of the testator could not be defeated by the assignment by the son of the income, previous to its payment to him, to an attorney in consideration of meritorious services rendered by the latter in the preservation of the estate.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

*Cunningham & Eliot* for Partridge *et al.,* appellants.

(1) The clause contained in the will of John Cavender, whereby Robert S. Cavender is sought to be restrained from the power to sell or alienate the income of the estate by way of anticipation, is not valid, or of force to defeat the rights of creditors. *Parsons v. Spencer,* 83 Ky. 305 ; *Rudd v: Van der Hagen,* 5 S. W. Rep. 416 ; *Marshall v. Rash,* 7 S. W. Rep. 879 ; *Smith v. Towers,* 14 Atl. Rep. 497. (2) The clause restraining Robert Smith Cavender from power to alien his interest

in the trust estate does not necessarily include an intention to deny creditors the right to reach the accrued incomes or the accruing incomes with the aid of a court of equity. *Bank v. Herbert,* 8 Cranch, 36 ; *Casey v. Cavaroe,* 96 U. S. 489.

*J. S. Fullerton* for Post, appellant.

A solicitor has a lien, for his services, "upon a fund recovered by his aid, paramount to that of the persons interested in the fund, or those claiming as their creditors." See *Puett v. Beard,* 86 Ind. 172 ; *Barker v. St. Quintin,* 12 Mees. and W. 441 ; *Vaugn v. Davies,* 2 H. Bl. 440 ; *Willie v. Coxe,* 15 How. 415 ; *Stratton v. Hussey,* 62 Me. 286 ; *Andrews v. Morse,* 12 Conn. 444. "The reason for the rule is that the services of the solicitor have, in a certain sense, created the fund, and he ought in good conscience to be protected." *Puett v. Beard, supra ;* see, also, *Adams v. Lee,* 82 Ind. 587 ; *Spenser's Appeal,* 9 Atl. Rep. 523 ; *Boyle v. Boyle,* 106 N. Y. 954. And see farther, *Ex parte Plitt,* 2 Wall. C. Ct. 453 ; *Darby v. Cabanne,* 1 Mo. App. 126 ; *Barnsley v. Powell,* 1 Amb. 102 ; *Montgomery v. Eveleigh,* 2 McCord's Chy. 259 ; *Murray v. Barber,* 3 Mylne and K. 209 ; *Shirley v. Shattuck,* 28 Miss. 27 ; *In re Ladd,* 34 Beav. 650 ; 2 White and Tud. Lead Cas. 551.

*Boyle, Adams & McKeighan* for respondents.

(1) The controlling guide in construing a will is to ascertain the intention of the testator. *Smith v. Hutchinson,* 61 Mo. 83. (2) The provisions of the will of John Cavender, requiring the income to be paid to Robert "on his personal receipt therefor, without the said Robert having any power to sell, assign or pledge the same, previous to the payment thereof to him, as aforesaid (*i. e.,* on his personal receipt) by way of anticipation"—not only restrains alienation of it directly, but

indirectly, and necessarily includes and involves alienation by process of court in favor of creditors. *Montague v. Crane*, 12 Mo. App. 582 ; *Smith v. Towers*, 14 Atl. Rep. 497.

SHERWOOD, J.—The object of this proceeding, instituted in May, 1885, is to charge the incomes, both accrued and accruing, of a certain trust estate held by John M. Glover, as trustee for Robert S. Cavender, in order to satisfy a judgment in favor of plaintiffs for $5,846.22, rendered in 1879, in the United States circuit court for the southern district of Illinois. On this judgment, execution issued and was returned *nulla bona.* The incomes referred to are derived from certain property devised by the last will of Jno. Cavender, deceased, probated in 1862, in the probate court of the city of St. Louis.

The provisions of the will, so far as pertinent here, are as follows : " And fourthly, the other half thereof (the residuary estate of the testator), reckoning and including therein any and all advancements to my son, Robert Smith Cavender, in my lifetime, made, my said executors, trustees as aforesaid, or the survivor of them, shall hold in trust for the use and benefit of my son, Robert Smith Cavender, for and during the term of his natural life ; and I do hereby require and direct my said executors, trustees as aforesaid, or the survivor of them, to invest the same in such real or personal estate, or in such real or personal securities, and the same to sell again, and the proceeds thereof to reinvest in such other real or personal estate, or in such other real or personal securities, as they or the survivor of them shall deem best, and receive the rents, issues, profits and incomes thereof, and the same to pay over to the said Robert Smith Cavender, semi-annually, at the end of each and every half year, reckoning from the date of my decease, *on his personal receipt therefor, without the said Robert having any power to sell, assign or pledge the same*

*previous to the payment thereof to him, as aforesaid, by way of anticipation; which said receipt shall be to said trustees, or the survivor of them, their full acquittance and discharge therefor.*

"And until my said estate shall have been sold and converted into money, in the manner aforesaid, and the portion above herein given to said Robert, for the term of his natural life as aforesaid, shall be ascertained in the manner aforesaid, and not being longer than four years from and after my decease, my said executors, trustees as aforesaid, or the survivor of them, shall, in place of the said annual income, pay to my said son Robert out of the said half of the said residue of my estate above herein given to him for and during the term of his natural life, as aforesaid, the sum of one thousand dollars per annum, payable semi-annually at the end of each and every half year from and after the date of my decease, *on his personal receipt, in the manner aforesaid.*"

The accrued incomes in the hands of the trustee, Glover, at the time of filing the petition, amounted to the sum of $6,786.86, and the fair semi-annual income of the estate, when properly invested, amounts to five hundred dollars. This is the substance of the petition, which concludes with a prayer for sequestration of the incomes and injunction in usual form.

Defendants Cavender and Glover filed general demurrers to the petition. Defendant Post filed answer, alleging that during the years 1878, 1879 and 1880, he rendered legal services to Cavender in preserving the real estate aforesaid, and that, in consideration of such services, Cavender, in April, 1885, by deed, assigned to him all incomes from the trust estate, accrued and accruing, that the trustee was notified thereof, and by reason of such assignment, the plaintiffs had no right to recover the same. To this answer, the plaintiffs demurred generally.

The court held the petition and answer insufficient;

rendered final judgments, and the plaintiffs and the defendant and intervenor Post, have appealed.

The validity of trusts having clauses against alienation, though without cesser or limitation over, has been decided in *Lampert v. Haydel*, *ante*, p. 439.

This record presents two questions : (1) Whether the accrued and accruing incomes in this case can be reached by creditors, as attempted by plaintiffs? (2) Whether the deed of assignment made by the defendant Cavender had the effect to transfer such incomes to the intervenor Post ?

I.  In construing wills, the familiar rule prevails that they are to be construed as a whole ; liberally construed ; construed with reference to the intention of the testator ; and unless that intention if carried out will violate some positive rule of law, or subvert some rule of public policy, such intention must be allowed to control, and be effectuated by the courts.  And in construing wills which create trusts, the same liberality of construction as to such trusts prevails.  In the present case, the language of the testator is: "Receive the rents, issues, profits and incomes thereof, and the same to pay over to the said Robert Smith Cavender, semiannually, at the end of each and every half year, reckoning from the date of my decease, on his personal receipt therefor, without the said Robert having any power to sell, assign or pledge the same previous to the payment thereof to him, as aforesaid, by way of anticipation ; which said receipt shall be to said trustees, or the survivor of them, their full acquittance and discharge therefor."

What is the central idea of the testator, as disclosed by this clause of his will ?  It seems to me that it is this :  To so guard the incomes of the trust estate, *that previous to their being paid to the beneficiary, and his personal receipt given therefor*, he was to have no power over them whatever ; in a word, they were not to *belong to him until then*.

It is true, no mention is made about their being made liable for his debts ; but is not this fairly inferable from that clause and the whole context of the will ?    The incomes are to be paid to him during his natural life ; this clearly indicates a provision for his support for that period.    If such was the intention of the testator, would not that intention be completely frustrated, if those incomes could be reached in any other way than that specifically pointed out by the founder of the trust ?

Certainly no process of the courts looking to a sequestration of the incomes for the payment of debts could supply the place of the *personal receipt* of the beneficiary, and of a *personal payment to him*.    On this point, an eminent text-writer remarks :  " In short, if a trust is created for a specific purpose, and is so limited that it is not repugnant to the rule against perpetuities, and is in other respects legal, neither the trustees, nor the *cestui que trust*, nor his creditors or assignees, can divert the property from the appointed purposes.    Any conveyance, whether by operation of law or by the act of any of the parties, which disappoints the purposes of the settler by diverting the property or the income from the purposes named, would be a breach of the trust."    1 Perry on Trusts, sec. 386*a*.

A case recently decided in Maryland resembles the case at bar very closely :  There the clause in the will required the trustee to collect the rents and profits and pay the same to the testator's son, "into his own hands, and not into another's, whether claiming by his authority or in any other capacity."    And touching this clause the court observed :   " (1) Did the testator mean to give the income of the property to his son to the exclusion of his creditors ?    (2) If so, are the terms and provisions of the will effectual to carry out this intention ? "    The court say :  " If the income in the hands of the trustee is liable to the claims of creditors, the trustee, it is plain, could not carry out the

trust. So construing this will as we do, and it is not, we think, susceptible of any other construction, the testator meant, beyond all question, that the income should be paid into the hands of his son, to the exclusion of all other persons, whether claiming the same as alienees or as creditors." *Smith v. Towers*, 14 Atl. Rep. 497.

It is noteworthy that in that case there are no express words forbidding alienation, anticipation or sequestration of the incomes; but the theory of the opinion is that as a specific mode is pointed out in which the trustee is to discharge his duties, and this mode is inconsistent with the claims of creditors or alienees, that therefore they are necessarily excluded. The same principle applies here.

In a similar case, Judge BAKEWELL expresses virtually the same views. And though involuntary conveyances are not expressly prohibited by this will, such a prohibition is contained by manifest implication in the words: "It is my express will that the annual income which may accrue to my children shall not be in any mode anticipated nor shall the same be any way assigned, transferred, conveyed or encumbered." "In any way" contains involuntarily to permit the beneficiary to do in a ruinous and roundabout way, by suffering judgment, what he cannot do in a straight way, is to play fast and loose with the language of the will and to defeat the testator's intention. If the interest is alienable by the judgment debtor it cannot be seized for his debts by any equitable garnishment or other process. *Montague v. Crane*, 12 Mo. App. 582. For these reasons, it must be ruled that neither the accrued nor the accruing incomes were liable to the claims of creditors.

II. The reasons already given are equally conclusive against the claims of the intervening defendant, to whom the deed of assignment was made. The merit of

the services he rendered in the preservation of the trust estate, constitutes no ground for defeating the express commands of the settler.

This results in affirming the judgments of the circuit court. All concur with the exception of RAY, J., absent.