**Meade WILLIAMS, Appellant,**

**v.**

**Lorraine FRISBEE, Defendant,**

**Robert A. Smith, Sr., as Trustee under the Will of Roy V. Woodworth, Deceased, and St. Louis Union Trust Company, a Corporation, as Trustee under the Will of Roy V. Woodworth, Deceased, Garnishees (Respondents).**

**No. 51980.**

Supreme Court of Missouri, En Banc.

Sept. 11, 1967.

Rehearing Denied Oct. 9, 1967.

David Y. Campbell, St. Louis, for plaintiff-appellant.

Thomas S. McPheeters, Jr., Thomas C. Walsh, St. Louis, for garnishees-respondents, Bryan, Cave, McPheeters & McRoberts, St. Louis, of counsel.

DONNELLY, Judge.

This is a garnishment proceeding.

On June 6, 1955, the District Court of Dallas County, Texas, entered a final judgment in favor of plaintiff Meade Williams and against defendant Lorraine Frisbee, in the amount of $10,000, with interest from the date thereof at 6% per annum, together with all costs.

A petition to register said foreign judgment was filed by Williams in the Circuit Court of St. Louis County, Missouri, on January 14, 1965, and on April 7, 1965, the Circuit Court of St. Louis County entered its final judgment against Lorraine Frisbee and in favor of Williams.

Thereafter, upon request of Williams, garnishments were issued by the Clerk of the St. Louis County Circuit Court, and writs thereunder were served on St. Louis Union Trust Company and Robert A. Smith as garnishees. Williams filed interrogatories, both garnishees filed their answers, Williams filed his denials of the answers of garnishees, and garnishees filed their separate replies.

Garnishees are trustees, under the will of Roy V. Woodworth, of a trust created under Article Ninth of said will, for the benefit of Lorraine Frisbee, his daughter. Woodworth died on August 11, 1958, and his will provides, in part, that seven years after the date of his death, 50% of the then remaining corpus and accumulated income of said trust for Lorraine Frisbee "shall be distributed, free from her separate trust, to my daughter, Lorraine Frisbee," if living. Lorraine Frisbee was alive on August 11, 1965, seven years after her father's death, and still lives.

Woodworth's will further provides, in Article Fifteenth:

"To the extent permitted by law, no beneficiary shall have any power to dispose of or to charge by way of anticipation any

interest given to him, and all sums payable to any beneficiary shall be free and clear of his debts, contracts, disposition, and anticipations, and shall not be taken or reached by any legal or equitable process in satisfaction thereof. * * *"

The 50% of the trust assets to which Lorraine Frisbee was entitled on August 11, 1965, was of the market value of $17,190.61. Garnishees did not distribute said 50% of said trust assets to Lorraine Frisbee on August 11, 1965, and they continue to hold the same.

The trial court found that the assets held by garnishees are not subject to garnishment and ordered the garnishments dismissed. We affirm the order of the trial court.

The validity of spendthrift trust provisions in Missouri is not in issue. Lampert v. Haydel, 96 Mo. 439, 9 S.W. 780, 2 L.R.A. 113 (1888). Meade Williams contends that the direction in the will that a portion of the corpus and accumulated income be distributed seven years after the date of Woodworth's death (which was the date of service of the garnishments, August 11, 1965) is mandatory and not permissive; that on August 11, 1965, the trust terminated as to the assets here involved and the spendthrift provision ceased to be applicable thereto; that on said date, and thereafter, Lorraine Frisbee was the fully vested owner in fee simple, entitled absolutely to possession of the property in the hands of garnishees; and that Meade Williams stands in the shoes of Lorraine Frisbee, and is entitled to garnishment of the property, which garnishees admit they owe Lorraine Frisbee.

"In construing wills, the familiar rule prevails that they are to be construed as a whole; liberally construed; construed with reference to the intention of the testator; and unless that intention, if carried out, will violate some positive rule of law, or subvert some rule of public policy, such intention must be allowed to control, and

be effectuated by the courts. And, in construing wills which create trusts, the same liberality of construction as to such trusts prevails." Partridge v. Cavender, 96 Mo. 452, 456, 9 S.W. 785, 786 (1888).

In Partridge v. Cavender, supra, this Court held that accrued and accruing incomes could not be reached by creditors of a beneficiary under the following pertinent provisions of Jno. Cavender's will:

" 'And, *fourthly*, the other half thereof (the residuary estate of the testator,) reckoning and including therein any and all advancements to my son, Robert Smith Cavender, in my life-time, made, my said executors, trustees as aforesaid, or the survivor of them, shall hold in trust for the use and benefit of my son, Robert Smith Cavender, for and during the term of his natural life; and I do hereby require and direct my said executors, trustees as aforesaid, or the survivor of them, to invest the same in such real or personal estate, or in such real or personal securities, and the same to sell again, and the proceeds thereof to reinvest in such other real or personal estate, or in such other real or personal securities as they or the survivor of them shall deem best, and receive the rents, issues, profits, and incomes thereof, and the same to pay over to the said Robert Smith Cavender, semi-annually, at the end of each and every half year, reckoning from the date of my decease, *on his personal receipt therefor, without the said Robert having any power to sell, assign, or pledge the same previous to the payment thereof to him, as aforesaid, by way of anticipation; which said receipt shall be to said trustees or the survivor of them, their full acquittance and discharge therefor.*

" 'And until my said estate shall have been sold and converted into money in the manner aforesaid, and the portion above herein given to said Robert for the term of his natural life, as aforesaid, shall be ascertained in the manner aforesaid, and not being longer than four years from and after my decease, my said executors, trustees

as aforesaid, or the survivor of them, shall, in place of the said annual income, pay to my said son Robert, out of the said half of the said residue of my estate above herein given to him for and during the term of his natural life as aforesaid, the sum of one thousand dollars per annum, payable semi-annually at the end of each and every half year from and after the date of my decease, *on his personal receipt, in the manner aforesaid.'* "

Williams properly contends that the Cavender will expressly directed payments be made by the trustee "on the personal receipt" of the beneficiary, and stated that the beneficiary was to have no power to alienate the property "previous to the payment thereof to him." Language in this form does not appear in the Woodworth will. However, we must look to substance, not to form, and may not frustrate the intention of the testator.

Woodworth stipulated that "all sums payable to any beneficiary shall be free and clear of his debts, * * * and shall not be taken or reached *by any legal or equitable process* in satisfaction thereof." (Emphasis ours.) We believe Woodworth intended that the assets of the trust should not be reached by garnishment, and should not be available to creditors of the beneficiary until actually paid to her. Williams may not by garnishment reach the assets held by garnishees. The order of the trial court is affirmed.

Garnishees have filed in this Court a claim for allowance of attorneys' fees for services rendered and expenses incurred on appeal. By stipulation filed in the trial court on November 2, 1965, each of the parties reserved "the right to offer evidence with regard to the garnishees' claims for attorneys' fees or other expenses whether now or hereafter asserted by the garnishees." The case is remanded for determination of this claim by the trial court.

Affirmed and remanded.

All concur.