See also 2013 WL 709650.

344 P.3d 345

**RUSSELL PICCOLI P.L.C.,**
**Plaintiff/Appellee,**

**v.**

**Kathleen M. O'DONNELL, Trustee;**
**Francis E. O'Donnell, Jr., a married man, Defendants/Appellants.**

**No. 1 CA–CV 13–0554.**

Court of Appeals of Arizona,
Division 1.

Feb. 26, 2015.

Russell Piccoli, P.L.C., By Russell Piccoli, Phoenix, Counsel for Plaintiff/Appellee.

Gaona Law Firm, By David F. Gaona, Phoenix, Counsel for Defendants/Appellants.

Presiding Judge JON W. THOMPSON delivered the opinion of the Court, in which Judge DONN KESSLER and Chief Judge DIANE M. JOHNSEN joined.

## OPINION

THOMPSON, Judge:

¶ 1 Appellants appeal from the trial court's grant of summary judgment 1) confirming an arbitration award and certifying it as a final judgment, and 2) issuing a declaratory judgment that the amounts awarded to attorney Russell Piccoli and Mariscal, Weeks, McIntyre & Friedlander, P.A. (collectively Law Firm) at arbitration constituted marital debts pursuant to Missouri law that could be satisfied out of marital assets. For the following reasons, we affirm the decision of the trial court.

## FACTUAL AND PROCEDURAL HISTORY

¶2 Francis E. O'Donnell Jr. (Frank) and Kathleen E. O'Donnell (Katie) were married in 1990. A day before and shortly after his marriage to Katie, Frank established a number of trusts entitled "The Francis E. O'Donnell Jr. Irrevocable Trusts #1 through 10 and Descendents Trust" (the trusts). Frank's sister Kathleen M. O'Donnell (Trustee), an Arizona attorney, was trustee of the trusts and administered them in Maricopa County. Katie filed for divorce in Missouri in 2008. As of the briefing in this appeal, the divorce was still pending.

¶3 In May 2009, Trustee filed an action in Maricopa County probate court seeking a declaration that Katie was no longer a beneficiary of the trusts and to determine whether she had any marital interest in any of the trust assets. Katie hired Law Firm to represent her in the probate action and in a civil action she brought against Frank and Trustee alleging various torts relating to the administration of the trusts.[1]

¶4 Katie unsuccessfully attempted to join Trustee and the trusts as necessary parties in the Missouri divorce proceeding.[2] In November 2010, the Missouri court confirmed that the Maricopa County probate court should decide whether the trust assets were marital in nature under Missouri law, stating that the determination would not "prejudice the ability of the Missouri court to eventually address the equitable distribution of the property and debts of the parties along with the other issues involved in the dissolution proceeding." Also in November 2010, the Missouri court denied Trustee's motion to intervene in the Missouri divorce, without prejudice to her reasserting the motion to intervene in the future.

¶5 Katie ultimately was successful at trial in Arizona; in 2011 the probate court determined that she had a marital property interest in the trust assets.[3] Trustee and Frank appealed. Law Firm withdrew from representing Katie prior to the briefing in that appeal. It then sought to intervene in the probate action to protect its interest in attorneys' fees and costs owed by Katie. The probate court denied Law Firm's motion to intervene.

¶6 We affirmed the probate court's decision in *In re Francis E. O'Donnell, Jr., Irrevocable Trust No. 1 to No. 10,* No. 1 CA–CV 11–0261, 2013 WL 709650 (App. Feb. 26, 2013) (mem. decision). In doing so, we acknowledged that, under Missouri law, "a spouse does not have a presently enforceable ownership interest in marital property until a court has issued a decree of dissolution," but concluded that the probate court could still determine whether Katie factually had a marital interest in the trust assets. *Id.* at ¶¶ 18–19. After a dispute arose over Law Firm's fees, Law Firm filed a private arbitration action against Katie pursuant to its retention agreement with her. Trustee and Frank were not involved in the arbitration because they were not parties to the retention agreement. The arbitration resulted in an arbitration award in favor of Law Firm and against Katie for $163,642.37.[4] The award stated that the $163,642.37 "constitute[d] a marital debt within the purview of Missouri law...."

1. The civil case was consolidated with the probate case.

2. In its July 2009 ruling, the Missouri court determined that Arizona had exclusive authority to determine trust-related issues, including whether Katie had any interest in the trusts. In September 2013, the Missouri court ruled on Katie's second motion for joinder and granted the motion to join Trustee and the trusts as indispensable and necessary third parties. In doing so, the Missouri court observed that it had only denied the first motion until the Arizona court determined whether Katie had a "possible interest" in the trusts, because "[o]nly then [could the Missouri court] determine whether complete relief in the dissolution case [could] be afforded without the joinder of additional parties." The court concluded that since the Arizona appellate process had been completed as of June 2013, there was no reason for it to continue to abstain from ruling on Katie's second motion for joinder.

3. The court determined, however, that pursuant to the trust language, Katie had ceased to be a beneficiary of the trusts upon Frank and Katie's separation.

4. The arbitration concerned a portion of Law Firm's claimed fees; a second arbitration was set to determine Law Firm's contingent fee rights.

¶ 7 In August 2012, Law Firm filed a complaint in superior court (the case resulting in this appeal) against Katie, Frank, and Trustee requesting a declaratory judgment that its arbitration award against Katie could be satisfied from the marital assets. After briefing, the trial court granted Law Firm's motion for summary judgment. The court rejected Frank and Trustee's argument that the award should not be confirmed because it resulted from collusive conduct between Law Firm and Katie, and issued a declaratory judgment including Arizona Rule of Civil Procedure 54(b) certification on April 18, 2013 that:

> (a) [Katie] incurred her debt to [Law Firm] during the marriage to [Frank];
>
> (b) all amounts awarded, and to be awarded, to [Law Firm] at arbitration constitute marital debts within the purview of Missouri law; and
>
> (c) all awards and judgments in favor of [Law Firm] may be satisfied out of those assets found to be marital assets by this Court's judgment of February 9, 2011, subject to any further order of the Circuit Court of St. Louis County, in 08SL–DR–01397.

The court further stated:

> the requested declaratory relief is for an order that Katie's obligation to [Law Firm] is a marital debt and may be satisfied from the marital property, subject to further order of the Missouri Family Court. It has nothing to do with how the Missouri court might ultimately divide the parties' assets, allocate their debts between them, treat other creditors, or impact the Missouri dissolution court. These are issues for the Missouri court to address.[5]

¶ 8 In August 2013, Trustee and Frank filed a motion to stay Law Firm's attempts to execute on the judgment pending a final divorce decree from the Missouri court and a motion to determine whether the court should issue a supersedeas bond. The court denied the request for stay, stating:

> [T]his Court has repeatedly denied [Trustee and Frank]s' requests to delay a judgment (and execution thereon) pending a final decree by the Missouri Divorce Court. It is disingenuous for [Trustee and Frank] to suggest that this Court's Judgment requires the Missouri Court to issue further orders before [Law Firm] can pursue collection.
>
> . . . .
>
> To be clear, the language in the April 18, 2013 Judgment—"subject to any further order" of the Missouri Dissolution Court—did and does not mean that an order relating to distribution of property and debt in the dissolution action is necessary to execute on the Judgment in this case. It means the Judgment is subject to execution against the trust assets or any other resources unless and until the Missouri Court exercises its jurisdiction over the divorce case in a way that impacts the Judgment. According to Plaintiff's Response, the Missouri Court has had the Judgment lodged since May 23, 2013, and taken no action.

The court ordered Trustee and Frank to post a bond in the amount of the judgment plus interest. In September 2013, the court entered a judgment *nunc pro tunc* relating back to the court's April 18, 2013 judgment.

¶ 9 Trustee and Frank timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) section 12–2101 (2003).

## DISCUSSION

### A. Standard of Review

■ ¶ 10 Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a). We review the grant of summary judgment de novo to determine whether any

---

5. On April 24, 2013, Frank filed a motion for declaratory judgment in the Missouri family court, requesting that the Missouri court "communicate to the [s]uperior court of Maricopa County, Arizona that the authority of a court with regard to marital debt is limited to the ability to assign one spouse the primary duty of paying said debt and holding the other party harmless." On Katie's motion, the Missouri court dismissed the motion for declaratory judgment, agreeing it was an impermissible collateral attack on the Arizona court's judgment.

genuine issue of material fact exists, and we view the evidence and all reasonable inferences in favor of the non-moving party. *Chalpin v. Snyder,* 220 Ariz. 413, 418, ¶ 17, 207 P.3d 666, 671 (App.2008) (citation omitted). Summary judgment should be granted "if the facts produced in support of [a] claim . . . have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim. . . ." *Orme Sch. v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).

## B. There Was a Justiciable Controversy Between Law Firm and the Parties

¶ 11 Appellants first argue that the judgment should be reversed because it constituted an advisory opinion that resolved theoretical rights. Because the Missouri dissolution action remained pending, they contend, the action brought by Law Firm was non-justiciable. We disagree.

¶ 12 For there to be a justiciable controversy in a declaratory judgment action, "there must be an assertion of a right, status or legal relation in which the plaintiff has a definite interest and a denial of it by the opposing party." *Samaritan Health Svcs. v. City of Glendale,* 148 Ariz. 394, 395, 714 P.2d 887, 888 (App.1986) (citation omitted). We interpret the declaratory judgment act liberally. *Keggi v. Northbrook Prop. & Cas. Ins. Co.,* 199 Ariz. 43, 45, ¶ 10, 13 P.3d 785, 787 (App.2000) (citation omitted). Here, the trial court correctly found that a justiciable controversy existed as to Law Firm's interest in the trust assets. In 2011, we affirmed the trial court's judgment that the trust properties constituted marital property under Missouri law. After obtaining its arbitration award, Law Firm asserted a right to execute on the trusts to satisfy the marital debt. The appellants sought to prevent Law Firm from doing so. Accordingly, there was a justiciable controversy in this case.

## C. The Judgment Was Not a Collateral Attack on Prior Judgments or Inconsistent With Our Decision in 1 CA–CV 11–0261

¶ 13 Appellants next argue that the trial court's judgment was an improper collateral attack on a prior ruling of the Maricopa County probate court on November 5, 2010, and on judgments of the Missouri dissolution court dated July 10, 2009, November 2, 2010, and November 17, 2010, and that the judgment "improperly cross[ed a] jurisdictional boundary line" set by our decision in 1 CA–CV 11–0261. We disagree.

¶ 14 In its July 10, 2009 decision the Missouri court stated that "the Arizona court shall have the exclusive authority pursuant to [Mo.Rev.Stat.] Sect. 456.2–202 to determine the issues presented by [Katie]'s amended petition applicable to the trusts . . . includ[ing] the authority to declare whether [Katie] has any interest in the trusts and to interpret the terms of the trust pertaining to any such interest." In its November 2, 2010 judgment, the Missouri court denied Frank's motion for partial summary judgment requesting to dissolve the marriage only. In denying the motion, the court observed that it had a "statutory duty to characterize and to equitably divide the property of the parties as part of the final judgment of dissolution." The court further stated that it would "also need to resolve other financial issues between the parties as part of the eventual dissolution judgment that could be impacted by the property orders of this court."

¶ 15 In its November 17, 2010 order denying Frank's motion for reconsideration, the Missouri court stated:

The Judge in Arizona may apply Missouri law . . . to determine whether [Frank] properly placed marital assets in an irrevocable trust such that they are not subject to an equitable division of property in the dissolution proceeding. . . . That is a factual determination which the Court in Arizona is well suited to making and that finding will not prejudice the ability of the Missouri court to eventually address the equitable distribution of the property and debts of the parties along with the other issues involved in the dissolution proceeding.

¶ 16 In its November 5, 2010 minute entry, the Maricopa County probate court observed

that the Missouri court had expressly deferred to the Arizona court to resolve trust issues.

¶ 17 Appellants argue that these rulings show that the Missouri court had reserved to Missouri the equitable distribution of the parties' property, and that only the Missouri court could characterize property as marital property or debt as marital debt. This interpretation ignores the fact that after the Arizona trial court granted summary judgment to Law Firm, the Missouri court dismissed Frank's motion for declaratory judgment because it agreed that the motion was a collateral attack on the Arizona trial court's judgment in favor of Law Firm. In so ruling, the Missouri court stated, "the Arizona court properly ruled that its judgment that the debt to [Law Firm] was a marital debt 'has nothing to do with how the Missouri court might ultimately divide the parties' assets, allocate their debts between them, treat other creditors, or impact the Missouri dissolution court. These are issues for the Missouri court to address.'" The Missouri court clearly agreed that the Arizona trial court had the power to determine that the debt to Law Firm was marital debt.

¶ 18 In our memorandum decision in *In re Francis E. O'Donnell, Jr., Irrevocable Trust No. 1 to No. 10*, we affirmed the probate court's decision that there was a fraud on the marriage by Frank's transfer of marital assets to the trusts located in Arizona, and that there were marital assets in Arizona. 1 CA–CV 11–0261, 2013 WL 709650, at *13, ¶ 23 (Ariz.App. Feb. 26, 2013) (mem. decision). As a consequence, those marital assets are not subject to the trust terms. We rejected Trustee's argument that, as a matter of law, Katie could not assert a marital fraud claim because marital property could not exist prior to entry of a dissolution decree. *Id.* at *12, ¶ 20 n. 10. We further observed that:

> [u]nder [Mo.Rev.Stat.] § 452.330.2, the commencement of a dissolution proceeding does not modify the marital property rights of either party, or create new ones: it simply puts into play the right of a spouse to implement his or her marital property rights—such as the right to seek

an equitable distribution—in the event the marriage is dissolved.

*Id.* at *10, ¶ 17. Nothing in our memorandum decision would prevent the trial court's decision entering a judgment in favor of Law Firm.

### D. The Judgment Was Not Erroneous Under Missouri Law

¶ 19 Appellants next argue that the judgment should be reversed because it is improper under Missouri law. Citing Missouri Annotated Statutes § 452.330 et seq., appellants argue that the purpose of the Missouri statutes' characterization of property and debts as "marital" is solely to aid the divorce court in fairly dividing property acquired during marriage. They contend that the trial court here erred by assuming the Missouri statutes provide a substantive right to a creditor such as Law Firm. Section 452.330(1) provides that in a divorce proceeding, "the court shall set apart to each spouse such spouse's nonmarital property and shall divide the marital property and marital debts in such proportions as the court deems just after considering all relevant factors...." Section 452.330(2) defines marital property "[f]or purposes of sections 452.300 to 452.415 only" as all property acquired by either spouse during the marriage, and lists a number of exceptions to the rule.

¶ 20 Here, the marital property was determined pursuant to section 452.330 by the Arizona courts. Missouri asked Arizona to determine the status of the trust assets so that it could allocate the property. The decision of the Maricopa County probate court, as affirmed by our decision in 1 CA–CV 11–0261, conclusively determined that the trust assets constituted marital property of Frank and Katie.

¶ 21 Appellants also argue that under Missouri law a spouse has no power to contract debts for the other spouse during marriage and the assets of one spouse are not liable for the debts of the other spouse during marriage. Citing *Sigmund v. Rea*, 226 Ariz. 373, 248 P.3d 703 (App.2011), they assert that "Missouri law does not presume agency by virtue of the marital relationship." However, Law Firm's claim is not against the separate

assets of Frank or Katie; it is against their marital assets. As to that claim, it is immaterial that neither Frank nor Katie now has a separately enforceable interest in the marital assets, because they both own the assets and they are both judgment debtors as to Law Firm.[6] *See also Gryder v. Gryder*, 129 S.W.3d 467, 471 (Mo.Ct.App.2004) (marital debts in Missouri include all debts incurred either jointly or separately during marriage).

¶ 22 Appellants assert that "no evidence exists that Katie acted on behalf of Appellants in incurring her legal fees. . . ." But our prior decision held that "[t]he issue . . . is whether Frank committed a fraud on the marriage by placing what should have been marital property into the trusts in an attempt to change the character of the property from marital to non-marital." *In re Francis E. O'Donnell, Jr., Irrevocable Trust No. 1 to No. 10*, 1 CA–CV 11–0261, 2013 WL 709650, at *13, ¶ 23. In determining that the marital estate was defrauded, we necessarily determined that Katie acted on behalf of the marital estate when she sued to recover those assets for the estate.

**E. The Arbitrator Did Not Exceed His Authority, There Was No Evidence that the Arbitration Award Was Collusive, and the Judgment Did Not Violate Appellants' Due Process Rights**

¶ 23 Appellants argue that the trial court erred in entering the judgment against them because the arbitrator exceeded his authority, because the arbitration award was a product of collusion, because the trial court failed to follow the law, and because their due process rights were violated. Arizona Revised Statutes § 12–3023(A)(1), (4) (Supp. 2014) provides that, among other reasons, an arbitration award shall be vacated if "[t]he

award was procured by corruption, fraud or other undue means," or if "[a]n arbitrator exceeded the arbitrator's powers." "The superior court may reject an arbitration award only on narrow statutorily enumerated grounds. . . ." *Nolan v. Kenner*, 226 Ariz. 459, 461, ¶ 5, 250 P.3d 236, 238 (App.2011). Here, for reasons discussed above, the arbitrator did not exceed his authority in concluding that Katie's debt to Law Firm was a marital debt. There also was no probative evidence of collusion. Law Firm represented Katie successfully in her action to protect the marital assets. Katie and Law Firm stipulated that Law Firm should be awarded a judgment for its reduced hourly fees and costs for its representation. Because the stipulated award did not amount to collusion, we find no error.

¶ 24 Although appellants were not parties to the arbitration and did not get to participate in the arbitration proceeding, due process was satisfied because Frank and Trustee were joined in the action to confirm the award and were allowed to object to it.[7] Additionally, the trial court stated that the declaratory judgment was "subject to further order of the Missouri Family Court." It remains for the Missouri family court to divide the marital estate.

**F. Appellants' Affirmative Defenses**

¶ 25 Appellants assert that the judgment failed to address their affirmative defenses regarding the scope and enforceability of the contingent fee component of Katie's modified fee agreement with Law Firm, and there are issues of fact pertaining to the contingency fee. The declaratory judgment appealed from here awarded Law Firm a judgment for half its hourly fees and costs and did not address Law Firm's contingency fee. Accordingly, we do not decide whether there

6. Appellants' reliance on *Williams v. Frisbee*, 419 S.W.2d 99, 102 (Mo.1967), and *In re Standage v. Standage*, 147 Ariz. 473, 477, 711 P.2d 612, 616 (App.1985), is misplaced. In *Williams*, the Missouri Supreme Court determined that a beneficiary's creditor could not garnish a terminated Missouri spendthrift trust to satisfy the creditor's claims against the beneficiary until the trust assets were distributed. 419 S.W.2d at 102. In *Standage*, we affirmed an Arizona family court's order distributing the assets of a wholly owned

corporation because creditor rights would not be improperly impacted. 147 Ariz. at 477, 711 P.2d at 616. Here, however, the trust assets were properly determined to be assets of Frank and Katie's marital estate, not assets belonging to either one of them.

7. *See* A.R.S. § 25–215(D) (2006) (in an action on a debt or obligation contracted for marital benefit, both spouses must be joined).

**50**

were issues of fact with regard to the contingency fee.

### G. Attorneys' Fees and Costs

¶ 26 Appellants request their attorneys' fees and costs pursuant to A.R.S. § 12–341.01 (2006). Law Firm requests its reasonable costs pursuant to Arizona Rule of Civil Appellate Procedure 21. We deny appellants' request and award Law Firm its costs subject to its compliance with Rule 21.

## CONCLUSION

¶ 27 For the foregoing reasons, we affirm the decision of the trial court.